IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-664-D

| | |
|---|---|
| KHOSRO NESHAT and<br>MAHASTI NESHAT,<br><br>     Plaintiffs,<br><br>  v.<br><br>NATIONWIDE MUTUAL FIRE<br>INSURANCE COMPANY,<br><br>     Defendant. | **ORDER** |

On November 13, 2020, Khosro and Mahasti Neshat ("the Neshats" or "plaintiffs") filed a complaint in Wake County Superior Court against Nationwide Mutual Fire Insurance Company ("Nationwide" or "defendant") [D.E. 1-3]. Plaintiffs seek monetary relief and allege claims for breach of contract, unfair and deceptive trade practices, and bad faith under North Carolina law. See id. ¶¶ 29–40. On December 9, 2020, Nationwide removed the action to this court under 28 U.S.C. § 1446 [D.E. 1]. On January 15, 2021, Nationwide moved to dismiss counts two and three for failure to state a claim upon which relief can be granted [D.E. 11] and filed a memorandum in support [D.E. 12]. On February 5, 2021, plaintiffs responded in opposition to dismissing count two, but consented to dismissing count three [D.E. 13].[1] On February 19, 2021, Nationwide replied. As explained below, the court grants Nationwide's partial motion to dismiss and dismisses counts two and three.

---

[1] The Neshats concede that their complaint fails to state a claim for bad faith. See [D.E. 13] 9; cf. [D.E. 12] 12–14; [D.E. 14] 5. Accordingly, the court dismisses count three.

I.

The Neshats and Nationwide disagree about payments under the Neshats' fire insurance policy. The Neshats held a Nationwide homeowner's insurance policy, which covered both actual cash value ("ACV") and replacement cost ("RCV") coverage for their home and personal property. See Compl. [D.E. 1-3] ¶¶ 7–8. The policy provided coverages of $492,900 for their dwelling ("Coverage A"), $345,030 for their personal property ("Coverage C"), and $98,580 for loss of use ("Coverage D"), among other coverages. See id. ¶¶ 9–10.

On October 10, 2017, a fire occurred at the Neshats' home in Raleigh, North Carolina. See id. ¶¶ 6, 11. The Neshats timely contacted Nationwide and submitted a claim. See id. ¶ 12. The Neshats then gave Nationwide access to the property to investigate the loss. See id. ¶¶ 13–14. On December 11, 2017, Nationwide issued $242,019.24 to the Neshats under Coverage A. See id. ¶ 15. Between October 13 and December 19, 2017, Nationwide issued five separate payments under Coverage C totaling $110,077.78. See id. ¶¶ 16–17. The Neshats contend that these payments were unreasonably low. See id. ¶¶ 15–18. The Neshats hired a public adjuster to attempt to receive additional compensation under the policy. See id. ¶ 20. On February 4, 2019, Nationwide paid the Neshats an additional $137,859.16 under Coverage A. See id. ¶ 21. On July 23, 2019, Nationwide paid $35,034.45, and on January 31, 2020, Nationwide paid $2,546.56, both under Coverage C. See id. ¶ 22.

The Neshats bring a claim against Nationwide for breach of contract due to Nationwide's alleged failure to adequately inspect and adjust the Neshats' claim and failure to pay fully for damage. See id. ¶¶ 29–32. The Neshats also bring a claim for unfair and deceptive trade practices due to Nationwide's (1) alleged failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement, compelling the Neshats to institute litigation; (2) attempting to settle the claim

2

for less than a reasonable person would believe he was entitled; (3) failure to conduct a reasonable investigation; and (4) other violations that may become apparent through discovery. See id. ¶¶ 33–36. The Neshats seek monetary relief. See id. ¶¶ 39–40.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court

3

also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The Neshats' claims require the court to consider North Carolina state law. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

4

Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

The Neshats allege a UDTPA claim based on violations of N.C. Gen. Stat. § 58-63-15(11), which defines unfair insurance settlement practices. See Compl. ¶¶ 33–36. Although N.C. Gen. Stat. § 58-63-15(11) does not include a private cause of action, a plaintiff may obtain relief for section 58-63-15(11) violations under the UDTPA. See Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018); Burch v. Lititz Mut. Ins. Co., No. 7:12-CV-107-FL, 2013 WL 6080191, at *8 (E.D.N.C. Nov. 19, 2013) (unpublished); Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 69–71, 529 S.E.2d 676, 682–83 (2000).

To establish a UDTPA violation, a plaintiff must show "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Gray, 352 N.C. at 68, 529 S.E.2d at 681; see N.C. Gen. Stat. § 75-1.1; Kelly v. Ga.-Pac. LLC, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009) (collecting cases). "[W]hether an act or practice is an unfair or deceptive practice . . . is a question of law for the court." Gray, 352 N.C. at 68, 529 S.E.2d at 681; see ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 123 (4th Cir. 2006). Conduct violating N.C. Gen. Stat. § 58-63-15(11) violates the UDTPA because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 70–71, 653 S.E.2d 393, 398–99 (2007); Country Club of Johnston Cnty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002). Although N.C. Gen. Stat. § 58-63-15(11) requires a showing of a "frequency indicating a 'general business practice,'" a claim brought under the UDTPA does not. Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Westchester Fire Ins. Co. v. Johnson, 221

F. Supp. 2d 637, 643–44 (M.D.N.C. 2002).

A.

The Neshats allege that Nationwide engaged in unfair claims settlement practices in violation of section 58-63-15(11) by:

> a. Not attempting in good faith to effectuate a prompt, fair and equitable settlement of Mr. and Ms. Neshat's claim in which defendant's liability has become reasonably clear;
>
> b. Compelling Mr. and Ms. Neshat to institute litigation to recover amounts due under their insurance policy by offering them substantially less than their claim is worth;
>
> c. Attempting to settle the claim for significantly less than a reasonable person would have believed he or she was entitled;
>
> d. Refusing to fully pay Mr. and Ms. Neshat's claim without conducting a reasonable investigation based upon all available information and ignoring information provided to it by Mr. and Ms. Neshat and experts hired by the Neshats; and
>
> e. Engaging in such other unfair claims settlement practices as may become apparent during discovery of this matter.

Compl. ¶¶ 33–36.

Nationwide argues that the Neshats fail to state a UDTPA claim. See [D.E. 12] 4–12. As for paragraphs (a) and (c) of the complaint, Nationwide contends that the Neshats essentially recite subsections 58-63-15(11)(f) and (h) without any factual support. See id. at 5–6. Specifically, Nationwide contends that the Neshats erroneously complain that Nationwide should have settled the claim for the value the Neshats placed on the claim. See id. at 6.

Subsection (f) prohibits insurers from "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[.]" N.C. Gen. Stat. § 58-63-15(11)(f). Subsection (h) prohibits insurers from "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled[.]" Id. § 58-63-

6

15(11)(h). As for the complaint, "[s]imply invoking Chapter 58-63-15(11) does not suffice" to state a claim. Mason v. Universal Underwriters Life Ins. Co., No. 1:06CV190, 2006 WL 2847288, at *7 (W.D.N.C. Oct. 4, 2006) (unpublished); cf. Midgal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 328 (4th Cir. 2001) ("Rule 12(b)(6) requires more than the mere recitation of boilerplate statutory language."). In order to state a claim under subsection (f), the Neshats must plead "sufficient factual allegations demonstrating that [Nationwide] did not attempt in good faith to effectuate the prompt, fair, and equitable settlement of the claims." Clear Creek Landing Home Owner's Ass'n, Inc. v. Travelers Indem. Co. of Conn., No. 1:12cv157, 2012 WL 6641901, at *4 (W.D.N.C. Dec. 20, 2012) (unpublished); see Currie v. Phoenix Ins. Co., No. 3:13-CV-00366-MOC, 2014 WL 320373, at *4 (W.D.N.C. Jan. 29, 2014) (unpublished); see, e.g., Lockhart v. State Farm Fire & Cas. Co., No. 1:17-CV994, 2018 WL 3339531, at *2 (M.D.N.C. July 6, 2018) (unpublished).

"An insure[r] does not have a duty to settle an insured's claim." Blis Day Spa, LLC v. Hartford Ins. Grp., 427 F. Supp. 2d 621, 635 (W.D.N.C. 2006). Rather, it "only has a duty to consider settlement of the claim in good faith." Id. at 635–36. Moreover, a plaintiff needs to allege that the insurer's liability is reasonably clear to plead an unfair and deceptive trade practice under subsection (f). A mere disputed claim is not sufficient. See Elliott, 883 F.3d at 398; Sides v. Athene Annuity & Life Co., No. 3:19CV703-GCM, 2020 WL 2114380, at *4 (W.D.N.C. May 4, 2020) (unpublished); Universal Underwriters Ins. Co. v. Lallier, 334 F. Supp. 3d 723, 738 (E.D.N.C. 2018); Clear Creek Landing, 2012 WL 6641901, at *4 ("The fact that [the insured] may disagree with the assessment of [the insurer] . . . does not transform a run of the mill insurance dispute into a tort cognizable under Section 75-1.1."); cf. Blis Day Spa, 427 F. Supp. 2d at 635–36; Cent. Carolina Bank & Tr. Co. v. Sec. Life of Denver Ins. Co., 247 F. Supp. 2d 791, 801–02 (M.D.N.C. 2003) ("[A]dvocating a position that is ultimately determined to be incorrect does not necessarily

7

demonstrate a lack of good faith in attempting to settle a claim."). A similar standard of reasonably clear liability applies to claims under subsection (h). See, e.g., Majstorovic v. State Farm Fire & Cas. Co., No. 5:16-CV-771-D, 2018 WL 1473427, at *7 (E.D.N.C. Mar. 24, 2018) (unpublished) ("The difference between [the insured's] bills and [the insurer's] payment alone, however, does not establish that [the insurer] attempted to settle the claim for far less than a reasonable man would have believed he was due."); Guessford v. Penn. Nat'l Mut. Cas. Ins. Co., 918 F. Supp. 2d 453, 464 (M.D.N.C. 2013) (holding that the insured stated a claim where the insurer paid less than the amount of total medical expenses despite knowing the actual cost of plaintiff's medical expenses); Lemons v. Penn. Nat'l Mut. Cas. Ins. Co., No. 1:11CV257, 2011 WL 2565617, at *4 (M.D.N.C. June 28, 2011) (unpublished).

The Neshats parrot the language of subsections (f) and (h) in their complaint. See Compl. ¶ 34. Merely reciting the statutory language, however, does not suffice to state a claim. See, e.g., Mason, 2006 WL 2847288, at *7. The Neshats fail to plausibly allege that Nationwide engaged in unfair and deceptive trade practices in settling the claim. Rather, the Neshats merely allege a dispute about the amount owed under the policy, not bad faith by Nationwide. Moreover, the Neshats have failed to plausibly allege that Nationwide's liability is reasonably clear for the amounts in dispute. See Elliott, 883 F.3d at 398; Lallier, 334 F. Supp. 3d at 738; Clear Creek Landing, 2012 WL 6641901, at *4.

In opposition, the Neshats argue that they allege sufficient facts for unfair and deceptive acts by citing specific numbers showing amounts received from Nationwide before and after hiring a public adjuster. See [D.E. 13] 4–7. The Neshats contend that Nationwide's actions forced the Neshats to hire a public adjuster to settle the claim, further reducing their policy benefits. See id. at 4–5.

Nationwide replies that the Neshats' allegations of underpayment do not state a claim for unfair and deceptive trade practices. See [D.E. 14] 2–4. Nationwide argues that nothing forced the Neshats to hire a public adjuster, and that it is normal for an insurance company to make multiple payments on a claim. See id. at 2–3. Moreover, Nationwide contends that the Neshats do not plausibly allege that Nationwide intentionally delayed payment. See id. at 3.

Even viewing the complaint in the light most favorable to the Neshats, the Neshats do not plausibly allege unfair or deceptive settlement practices. The Neshats' decision to hire a public adjuster does not indicate an unfair or deceptive trade practice. Parties routinely employ adjusters in investigating and settling insurance claims. See, e.g., Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 229–30 (4th Cir. 2001) (per curiam) (unpublished); DENC, LLC v. Phila. Indem. Ins. Co., 426 F. Supp. 3d 151, 157–58 (M.D.N.C. 2019); Jackson v. Century Mut. Ins. Co., 255 N.C. App. 449, 803 S.E.2d 868, 2017 WL 3863901, at *1–3 (2017) (unpublished table decision). Similarly, that Nationwide made multiple payments does not suggest a UDTPA violation. Insurers sometimes issue multiple payments on a claim. See, e.g., Buchanan v. N.C. Farm Bureau Mut. Ins. Co., 270 N.C. App. 383, 385–86, 392, 841 S.E.2d 598, 601–02, 605 (2020). Moreover, the Neshats do not plausibly allege delay of or entitlement to additional payments. See, e.g., Essentia Ins. Co. v. Stephens, No. 5:20-CV-175-FL, 2021 WL 1206582, at *17 (E.D.N.C. Mar. 30, 2021) (unpublished); First Protective Ins. Co. v. Rike, No. 4:20-CV-124-D, 2021 WL 296153, at *6, 11–13 (E.D.N.C. Jan. 28, 2021) (unpublished); Jackson, 2017 WL 3863901, at *3. Thus, the Neshats fail to plausibly allege unfair and deceptive trade practices under subsections (f) and (h).

As for subsection (d), Nationwide contends that the Neshats fail to allege factual support for a violation of subsection 58-63-15(11)(d). See [D.E. 12] 6–8. Nationwide argues that the Neshats

9

fail to plausibly allege that Nationwide's investigation was inadequate. See id. at 7. Moreover, Nationwide contends that the multiple payments actually indicate a reasonable investigation. See id. at 7–8.

Subsection (d) prohibits insurers from "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information[.]" N.C. Gen. Stat. § 58-63-15(11)(d). Merely invoking subsection (d) does not suffice to survive a motion to dismiss. See Lallier, 334 F. Supp. 3d at 738; see, e.g., Lockhart, 2018 WL 3339531, at *2. Rather, a plaintiff must "identify [] specific failures or how those alleged failures damaged [them]." See Blis Day Spa, 427 F. Supp. 2d at 636. Factual allegations in a complaint indicating a reasonable investigation can actually work against a plaintiff's claim for failure to investigate. See, e.g., Essentia Ins. Co., 2021 WL 1206582, at *16; Lallier, 334 F. Supp. 3d at 738.

The Neshats parrot the language of subsection (d). See Compl. ¶ 34. They do not allege, however, any specific failures of Nationwide or how those failures injured them. Rather, the Neshats' complaint suggests that Nationwide conducted a reasonable investigation. Tellingly, the Neshats state that Nationwide had full and continuous access to the property, accounted for the public adjuster, conducted multiple investigations, and issued additional payments. See id. ¶¶ 6–17.

In opposition, the Neshats argue that Nationwide's initial investigation could not be reasonable or based upon all available information when it resulted in a lower amount before the Neshats hired a public adjuster. See [D.E. 13] 5–6. The Neshats also contend that Nationwide's complete and continuous access to the property belies a reasonable investigation, and assert that even with full access to the property, Nationwide still underpaid the Neshats. See id. at 6–7. Nationwide replies that the Neshats' arguments are conclusory and speculative. See [D.E. 14] 3–4.

Even viewing the complaint in the light most favorable to the Neshats, the Neshats merely

10

speculate that Nationwide's initial payment constitutes an unfair and deceptive trade practice in light of full access to the property. See Essentia Ins. Co., 2021 WL 1206582, at *16 ("The facts only give rise to an inference that plaintiff possibly, rather than plausibly, failed to reasonably investigate, meaning defendant's right to relief under section 58-63-15(11)(d) only rises to a speculative level."). The court, however, declines to view the initial payment in a vacuum.

As for subsection (g), Nationwide contends that the Neshats fail to plausibly allege a violation of subsection 58-63-15(11)(g). See [D.E. 12] 8–9. Nationwide argues that subsection (g) presumes that the insurer's liability has been established, something the Neshats fail to plead. See id. Rather, the complaint merely states a disagreement over how to value the claim. See id. at 9.

Subsection (g) prohibits insurers from "[c]ompelling the insured to institute litigation to recover amounts due under their insurance policy by offering them substantially less than the amounts ultimately recovered in actions brought by such insured." N.C. Gen. Stat. § 58-63-15(11)(g). In order to state a claim under subsection (g), an insured must allege that the insurer failed to pay amounts due under the policy for which the insurer's liability is clearly established, similar to a claim under subsection (f). See Elliott, 883 F.3d at 398; Lallier, 334 F. Supp. 3d at 738; Majstorovic, 2018 WL 1473427, at *7; Blis Day Spa, 427 F. Supp. 2d at 635–36; Cent. Carolina Bank & Tr. Co., 247 F. Supp. 2d at 801. "Typically, [clearly established liability] requires that the coverage issue be determined in favor of the insured." Essentia Ins. Co., 2021 WL 1206582, at *17 (alteration and quotation omitted); see DENC, 426 F. Supp. 3d at 158. "[T]he insurer should not be held liable for [] damages where there is a legitimate controversy as to whether benefits are due or the amount of such benefits." Cent. Carolina Bank & Tr. Co., 247 F. Supp. 2d at 801–02 (quotation omitted) (to hold otherwise "would make an insurer strictly liable for damage any time its pre-trial assessment of a claim proved to be incorrect."); Lemons, 2011 WL 2565617, at *4.

The Neshats do not plausibly allege that Nationwide's liability was clearly established for any unpaid amounts. In fact, the Neshats do not allege any additional amounts due under the policy, but merely allege a disagreement about the amount of the claim. Mere payment dispute is insufficient to state a claim for relief under the UDTPA.

As for paragraph (e), Nationwide contends that the Neshats cannot base a claim on yet-to-be-determined violations. See [D.E. 12] 9–10. Nationwide argues that such allegations do not put Nationwide on notice of claims against them or show more than a speculative right to relief, in violation of Federal Rules of Civil Procedure 8 and 12(b)(6). See id.

In order to survive a motion under Rule 12(b)(6), a complaint must allege more than an appeal to future discovery. "While Rule 8 is a liberal standard, plaintiffs cannot simply promise the court that once they have completed discovery, something will turn up. Rather[,] before they are permitted to proceed to discovery, plaintiffs must have some factual basis for believing that a legal violation has actually occurred." Migdal, 248 F.3d at 328; accord Inst. of Mgmt. & Admin., Inc. v. Broadband Intel., Inc., No. AW-05-1853, 2006 WL 8460966, at *6 (D. Md. Jan. 25, 2006) (unpublished). The Neshats fail to state a claim for relief under subsection (e).

The Neshats also raise several broad objections in their response. For instance, the Neshats claim that Nationwide underpaid their claim. See [D.E. 13] 6. Merely because an insured receives less than the insured hoped to receive does not equal actionable underpayment. Rather, the focus is on whether the insurer acted in good faith in making the payment or payments that it made. See Elliott, 883 F.3d at 398; Essentia Ins. Co., 2021 WL 1206582, at *17; DENC, 426 F. Supp. 3d at 158; Lallier, 334 F. Supp. 3d at 738; Majstorovic, 2018 WL 1473427, at *7; Clear Creek Landing, 2012 WL 6641901, at *4; Blis Day Spa, 427 F. Supp. 2d at 635–36; Cent. Carolina Bank & Tr. Co., 247 F. Supp. 2d at 801–02.

12

The Neshats also argue that their cause of action under the UDTPA rests on Nationwide's duty to deal fairly and in good faith with policyholders, not a breach of the specific language of the insurance contract. See [D.E. 13] 7. True enough. Nonetheless, the Neshats fail to plausibly allege a UDTPA claim.

Lastly, the Neshats argue that an insurer cannot "fix" an unfair or deceptive act by later acting appropriately. See Robinson v. N.C. Farm Bureau Ins. Co., 86 N.C. App. 44, 49, 356 S.E.2d 392, 395 (1987); cf. Brown v. Nationwide Mut. Ins. Co., No. 1:11CV49, 2015 WL 71485, at *2 n.2 (M.D.N.C. Jan. 6, 2015) (unpublished); Guessford, 918 F. Supp. 2d at 463 n.4; Kielbania v. Indian Harbor Ins. Co., No. 1:11CV663, 2012 WL 3957926, at *12 (M.D.N.C. Sept. 10, 2012) (unpublished). The Neshats, however, fail to allege an unfair or deceptive act in the first place. Thus, the court rejects this argument.

B.

Nationwide asserts that the Neshats fail to plead aggravating factors to elevate their breach of contract claim to an unfair and deceptive trade practice. See [D.E. 12] 10–12. A "mere breach of contract, even if intentional, is not an unfair or deceptive act under [the UDTPA]" by itself. Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006); see PCS Phospate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Walker, 362 N.C. at 72, 653 S.E.2d at 399; Gray, 352 N.C. at 75, 529 S.E.2d at 685; Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61–62, 418 S.E.2d 694, 700 (1992). North Carolina law "does not permit a party to transmute a breach of contract claim into a . . . UDTPA claim . . . because awarding punitive or treble damages would destroy the parties' bargain . . . ." PCS Phosphate, 559 F.3d at 224; see Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases). However, if substantial aggravating circumstances accompany a breach of contract, then

13

those circumstances can create an UDTPA claim. See Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981); Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700. Generally, some element of deception, like forged documents, lies, or fraudulent inducements, must be present. See Stack v. Abbott Lab'ys, Inc., 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013); Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp., No. 16 CVS 217, 2017 WL 1148793, at *7 (N.C. Super. Ct. Mar. 27, 2017) (unpublished).

Nationwide concedes that the Neshats state a claim for breach of contract. See [D.E. 12] 10. Nationwide contends, however, that the Neshats do not allege any facts independent of those cited in support of their breach of contract claim, let alone any facts demonstrating deception or bad faith. See id. at 12. The Neshats respond that they are not required to plead aggravating factors or bad faith. See [D.E. 13] 8–9. Rather, the Neshats contend that they alleged sufficient behavior on the part of Nationwide to state a UDTPA claim. See id. at 9.

The Neshats allege a breach of contract in their complaint. See Compl. ¶¶ 29–32. The Neshats, however, fail to plausibly allege any aggravating factors, bad faith, or any violation of the statutory provisions of N.C. Gen. Stat. § 58-63-15(11). Accordingly, the court dismisses count two.

III.

In sum, the court GRANTS the defendant's partial motion to dismiss [D.E. 11], and DISMISSES counts two and three.

SO ORDERED. This 27 day of May 2021.

JAMES C. DEVER III
United States District Judge

14